CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 22, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| Chandler Shamburg, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00098 |
| | ) | |
| Ayvaz Pizza, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on a motion to dismiss filed by Defendants Ayvaz Pizza, LLC and Shoukat Dhanani (together, the "Ayvaz Defendants") (Dkt. 22). For the reasons that follow, this court will grant the motion in part and deny the motion in part.

### I.    Background

#### A. Factual Background

Facts alleged in the complaint are accepted as true for the purpose of resolving the motion and should be viewed in the light most favorable to Plaintiffs. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). At different times between 2020 and 2024, Plaintiffs Chandler Shamburg, Debralyn Duke, Crystal Sandle, Nolan Wright, Mario Shivers, Marvin Alexander, and Jacob Tafoya[1] were delivery drivers for Ayvaz Defendants, who operated over

---

[1] Since Plaintiffs filed their complaint in November 2024, Nan Murray, Sam Hubert, Juan Simonetti, Andrew Cyrus, Ashtyn Christian, Jessica Stewart, Melissa Tamez, Mutasem Shahed, Sofiane Saada, Luther Grant, Michael Schwerin, Dread Thomas, Jessica Lockhart, Brandon Mcnerney, Habibullah Sheerzad, Mohammad Sheerzad, Tony Bolden, Ghulam Hakimi, Rachel Candler, and Vijay Rohatgi have filed notices of consent to join suit, thereby becoming Plaintiffs in this collective action. (Dkts. 6, 11, 12, 13, 27, 39, 41, 43, 47, 51.)

300 Pizza Hut locations across the United States ("Ayvaz Pizza Hut Franchise Stores").
(Compl. ¶¶ 1, 2, 11, 14, 17, 20, 23, 26, 29, 75, 121, 142, 164, 185, 207, 228, 249 (Dkt. 1).)

Ayvaz Defendants have operated Ayvaz Pizza Hut Franchise Stores since September
2021.[2] (*Id.* ¶¶ 74, 193.) Ayvaz Pizza, LLC ("Ayvaz") is a foreign limited liability company with
a principal place of business in Texas. (*Id.* ¶ 34.) Ayvaz is registered to do business in Virginia
and operates an unidentified number of Pizza Hut Franchise Stores within the
Commonwealth. (*Id.* ¶¶ 34, 37.)

While employed as delivery drivers for Ayvaz Defendants, Plaintiffs worked "dual
jobs" in which they "completed deliveries and received tips" and also "helped inside the store
and did not receive tips." (*Id.* ¶ 77.) Plaintiffs' claims focus on their work completing
deliveries. (*Id.* ¶ 78.) Plaintiffs were paid minimum wage, slightly above minimum wage, or
minimum wage minus a tip credit for the hours they worked making deliveries. (*Id.* ¶ 82.)
They were required to use their own cars, ensure their cars were legally compliant, pay car-
related costs including gasoline expenses, maintenance and part costs, insurance, financing
charges, and licensing and registration costs, pay storage costs, cell phone costs, and data
charges, and pay for other necessary equipment. (*Id.* ¶¶ 83–86.)

Ayvaz Pizza Hut Franchise Stores did not track actual expenses incurred by their
delivery drivers while on the job or reimburse for those expenses. (*Id.* ¶¶ 89–92.) Rather, the
stores paid delivery drivers per each delivery they made until May 2022, when they began
paying drivers per each mile they drove during deliveries. (*Id.* ¶¶ 87–88.) Ayvaz Pizza Hut

---

[2] The complaint asserts that multiple Plaintiffs worked for Ayvaz Pizza Hut Franchise Stores in 2020 before Ayvaz
Defendants acquired the stores in September 2021. (*See* Compl. ¶¶ 164, 185, 207.)

Franchise Stores' reimbursement payments to delivery drivers were less than the IRS standard business mileage rate. (*Id.* ¶ 106.)

As a result of the car-related expenses incurred by Plaintiffs, they allege that "they were deprived of minimum wages guaranteed to them by the [Fair Labor Standards Act ("FLSA")] and state law." (*Id.* ¶ 117.) That is because Plaintiffs are paid a wage very close to minimum wage—and thus any car-related expenses "kicked back" to Ayvaz Defendants "an amount sufficient to cause minimum wage violations." (*Id.* ¶ 119.)

**B. Prior Cases Filed Against Ayvaz Defendants**

This case follows several other cases filed against Ayvaz Defendants in the U.S. District Courts for Minnesota, Texas, New Mexico, and Georgia. *See Stotesbery v. Muy Pizza-Tejas, LLC*, No. 0:22-cv-01622 (D. Minn. filed June 21, 2022); *Garza v. Ayvaz Pizza, LLC*, No. 4:23-cv-01379 (S.D. Tex. filed Apr. 12, 2023); *Echeverria v. Ayvaz Pizza, LLC*, No. 2:23-cv-00134 (D.N.M. filed Feb. 13, 2023); *Ramsey v. Ayvaz Pizza, LLC*, No. 1:23-cv-04801 (N.D. Ga. filed Oct. 19, 2023). Two cases are worth mentioning in detail.

1. *Stotesbery v. Muy Pizza-Tejas, LLC*, No. 0:22-cv-01622 (D. Minn. filed Jun. 21, 2022)

On June 21, 2022, John Stotesbery filed a complaint against Muy Pizza-Tejas, LLC, Ayvaz Pizza, LLC, Shoukat Dhanani, Doe Corporation 1-10, and John Doe 1-10 in the U.S. District Court for the District of Minnesota. *Stotesbery v. Muy Pizza-Tejas, LLC*, Compl. ¶ 1. Stotesbery alleged defendants required him and similarly situated employees to incur all costs related to automobile use and care while employed as delivery drivers for defendants' Pizza Hut franchises. *Id.* ¶ 76. Until May 2022, Stotesbery and similarly situated delivery drivers were reimbursed per each delivery they completed. *Id.* ¶ 78. In May 2022, defendants began

to reimburse delivery drivers per mile driven. *Id.* ¶ 79. As in *Shamburg*, the reimbursements offered by defendants were not based on actual expenses and were less than the IRS business mileage rate. *Id.* ¶¶ 80, 90.

In *Stotesbery*, defendants filed partial motions to dismiss based on lack of personal jurisdiction. *Id.*, Dkts. 23, 28. They argued that the FLSA collective action should be dismissed because the defendant Muy Pizza-Tejas, LLC was a foreign entity with its principal place of business located outside of the state; thus, the court lacked jurisdiction over collective class members who lived and worked outside of Minnesota. *Id.*, Dkt. 25 at 2–5. The U.S. District Court for the District of Minnesota granted the motion and dismissed members of the collective action who did not live in or work in Minnesota. *Stotesbery v. Muy Pizza-Tejas, LLC*, Dkt. 58.

The *Stotesbery* plaintiffs later requested permission to file a motion to reconsider the order granting the motion to dismiss. *Id.*, Dkt. 164. Their argument hinged on the Supreme Court's ruling in *Mallory v. Norfolk Southern Railway Co.*, where the Supreme Court held that a Pennsylvania court could exercise general personal jurisdiction over a Virginia company via its business registration in that state without offending the Due Process Clause of the Fourteenth Amendment. 600 U.S. 122, 141–45 (2023); *see Stotesbery v. Muy Pizza-Tejas, LLC*, Dkt. 158. The district court denied the plaintiffs' request for reconsideration, clarifying that *Mallory* was solely a reaffirmation of established precedent and did not alter the court's proper reliance on prior Eighth Circuit precedent. *Stotesbery v. Muy Pizzas, LLC*, Dkt. 247 at 4–5.

Plaintiffs then attempted to amend their complaint, *see id.*, Dkt. 249, to include the *Mallory* general jurisdiction argument. *See id.*, Dkt. 250. The court denied their second motion

- 4 -

to amend, referencing the plaintiffs' failure to bring their legal theory of personal jurisdiction at the outset of the case or amend at an earlier stage. *Id.*, Dkt. 310 at 6–7. The court suggested that an amendment may prejudice defendants and noted the opt-in opportunities for plaintiffs presented by parallel suits in other federal district courts. *Id.* at 9–12.

The Minnesota-based collective class members who remained in the suit settled with the Muy defendants in early 2025, but litigation against other defendants, including Ayvaz Pizza LLC and Shoukat Dhanani, remains pending. *Id.*, Dkts. 301, 320, 325.

    2. *Garza v. Ayvaz Pizza, LLC,* No. 4:23-cv-01379 (S.D. Tex. filed Apr. 12, 2023)

On April 12, 2023, Israel Garza and Larrie Gurule filed a complaint against Ayvaz in the U.S. District Court for the Southern District of Texas. *Garza v. Ayvaz Pizza, LLC*, Compl. They brought an FLSA collective action suit against Ayvaz, seeking to recover unpaid minimum wage and overtime for themselves and similarly situated delivery drivers employed by Ayvaz. *Id.* ¶¶ 2, 39. As in *Stotesbery*, the plaintiffs in *Garza* asserted that Ayvaz failed to reimburse the actual expenses they incurred while working as delivery drivers for Ayvaz's Pizza Hut franchises. *Id.* ¶¶ 17, 19.

Defendants filed a motion to compel arbitration and motion to dismiss, which the court granted as to two plaintiffs. *Id.*, Dkts. 18, 34. On June 26, 2024, the remaining plaintiff, on behalf of herself and those similarly situated, gave notice that a settlement had been reached. *Id.*, Dkt. 50. As a result, on March 7, 2025, the case was dismissed with prejudice. *Id.*, Dkt. 58.

## C. Procedural History

On November 14, 2024, Plaintiffs filed the instant complaint in the U.S. District Court for the Western District of Virginia, Harrisonburg Division.  (*See* Compl.)  Their complaint asserts eighteen counts.[3]

In Count I, Plaintiffs bring an FLSA collective action claim under 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated current and former delivery drivers employed at the Ayvaz Pizza Franchise Stores between September 28, 2021, and the opt-in deadline date. (*Id.* ¶¶ 270, 275.)  Plaintiffs assert that "Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for 'tools of the trade.'"  (*Id.* ¶ 273.)  Defendants willfully failed to pay the federal minimum wage, Plaintiffs allege, by requiring Plaintiffs to pay for their own vehicles and associated costs without adequate reimbursement.  (*Id.* ¶¶ 308, 315.)  As a result, Plaintiffs request the court award damages including but not limited to unpaid minimum wages, unpaid overtime wages, liquidated damages, costs, and attorneys' fees.  (*Id.* ¶ 317.)

Plaintiffs bring Counts II–XVIII under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and classes of persons consisting of all current and former delivery drivers employed at Ayvaz Pizza Hut Franchise stores in Virginia, Georgia, Texas, Florida, South Carolina, North Carolina, or New Mexico.[4]  (*Id.* ¶¶ 276–283.)

In Counts II, III, IV, VIII, X, XII, XIII, XV, XVI, and XVII, Plaintiffs assert violations of various states' minimum wage and overtime laws, timely payment of proper wage laws, and

---

[3] "Doe Corporation 1-10" and "John Doe 1-10" were also named as defendants in the complaint but were never served. (Dkt. 2.)
[4] The start dates of the putative classes vary by proposed class.  (*See* Compl. ¶¶ 276–83.)

withholding of wage laws.[5]  (*Id.* ¶¶ 318–411.)  Plaintiffs allege the out-of-pocket costs associated with buying and maintaining a vehicle for use on the job without proper reimbursement reduce class members' wages below minimum wage. (*Id.* ¶¶ 321, 350.) Failure to reimburse the actual expenses of such costs, Plaintiffs argue, is a violation of laws requiring timely payment of wages and an unlawful withholding of wages earned by class members.  (*Id.* ¶¶ 328, 332, 363, 379, 397, 403.)

In Counts V, VI, VII, IX, XI, XIV, and XVIII, Plaintiffs seek compensation for the unjust enrichment of Ayvaz Defendants pursuant to Virginia, Georgia, Texas, Florida, North Carolina, South Carolina, and New Mexico common law.  (*Id.* ¶¶ 334–411.)  Plaintiffs assert that Ayvaz Defendants are aware of the benefits conferred on them by class members, and it would be unjust for Ayvaz Defendants to retain such benefits.  (*See, e.g.*, *id.* ¶¶ 336–37.)

On February 18, 2025, Ayvaz Defendants moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).  (*See* Defs.' Mot. to Dismiss at 1 (Dkt. 22).)  On March 25, 2025, Plaintiffs filed a response brief.  (Pls.' Mem. in Opp'n (Dkt. 33).)  Finally, Ayvaz Defendants filed a reply brief on April 11, 2025.  (Defs.' Reply (Dkt. 38).)

A hearing on the motion was held on August 1, 2025.  (Dkt. 48.)

---

[5] Plaintiffs allege state-law violations pursuant to the Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28; Virginia Wage Payment Act, Va. Code Ann. § 40.1-29; Florida Constitution, Art. X, § 24; South Carolina Payment of Wages Act; S.C. Code Ann. § 41-10-10, *et seq.*; N.C. Gen. Stat. § 95-25.6; N.C. Gen. Stat. § 95-25.8; N.M. Stat. § 50-4-21, *et seq.*; and N.M. Stat. Ann. § 50-4-2.  (*See* Compl. ¶¶ 318–406.)

## II.    Standard of Review

### A.  Rule 12(b)(2)

A court may dismiss a claim for lack of personal jurisdiction under Rule 12(b)(2).  Fed. R. Civ. P. 12(b)(2).  A challenge to personal jurisdiction under Rule 12(b)(2) is addressed by the judge "with the burden on the plaintiff . . . to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Plaintiffs can meet their burden either at trial or at a pretrial evidentiary hearing. *Grayson v. Anderson*, 816 F.3d 262, 268–69 (4th Cir. 2016).  During an evidentiary hearing, the court may review depositions, interrogatory answers, admissions, live testimony, or other forms of jurisdictional evidence to come to a decision regarding jurisdiction.  *Id.*  A pretrial evidentiary hearing does not necessarily require live testimony.  *Id.* at 268.  Rather, the requirement may be satisfied by allowing the parties to present other jurisdictional evidence and legal arguments. *Id.*

When personal jurisdiction challenges are resolved without a pretrial evidentiary hearing, however, "the plaintiff need prove only a *prima facie* case of personal jurisdiction." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  A *prima facie* standard requires that "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Combs*, 886 F.2d at 676.  The court may consider evidence from both parties when making its decision.  *See Mylan Lab'ys, Inc.*, 2 F.3d at 62.

## B. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). Courts require no heightened pleading of facts to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rather, facts need only "state a claim to relief that is plausible on its face." *Id.*

A motion to dismiss under 12(b)(6) should be granted only if it is clear that "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor," the plaintiff is unable to prove a set of facts supporting his or her claim. *Edwards*, 178 F.3d at 244. Courts may additionally review documents attached to complaints as exhibits or those incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## III.    Analysis

## A. Personal Jurisdiction

Ayvaz Defendants argue that the court lacks personal jurisdiction (i) over Ayvaz Defendants with respect to the putative collective action members who neither live in nor work in Virginia and (ii) over Defendant Dhanani. (Defs.' Mem. at 14–18 (Dkt. 23).)

1. <u>Claims from Plaintiffs Who Neither Live in Nor Work in Virginia</u>

Ayvaz Defendants make two arguments regarding lack of personal jurisdiction over claims brought by potential collective action members who do not live in or work in Virginia. First, Ayvaz Defendants assert Plaintiffs fail to establish general jurisdiction on the basis of the explicit language in Virginia's business registration statute. (*Id.* at 16–17.)  Second, Ayvaz Defendants argue that this court cannot exercise specific personal jurisdiction over nonresident Plaintiffs' claims unrelated to the Defendants' conduct in the forum state. (*Id.* at 15–16.)

### i.    *General Jurisdiction*

Plaintiffs allege that Ayvaz Pizza LLC "consented to the Court's general personal jurisdiction" in the Commonwealth of Virginia because it "registered to do business and registered an authorized agent for service of process . . . pursuant to Virginia state law." (Compl. ¶¶ 35–36.)  In their motion, Ayvaz Defendants argue that the Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Company* does not extend to Virginia's business registration statute, such that general jurisdiction is not conditioned on a corporation's registration with the Commonwealth. (Defs.' Mem. at 16–18.)

In *Mallory*, after allegedly suffering injuries in Ohio and Virginia, a plaintiff sued Norfolk Southern (a Virginia corporation) in Pennsylvania state court. *Mallory*, 600 U.S. at 126.  Pennsylvania law requires out-of-state corporations like Norfolk Southern to register as "foreign corporation[s]" in order to conduct business in the state. *Id.* at 134.  According to state law, "qualification as a foreign corporation" statutorily permits Pennsylvania courts to "exercise general personal jurisdiction." *Id.* (citation omitted).  Norfolk Southern challenged this statute as violative of the Due Process Clause. *See id.* at 125–26.  The Supreme Court

disagreed. The Court held that the Due Process Clause does not prohibit "a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id.* at 127; *see Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95–97 (1917). Plaintiffs here seek to extend that holding to Ayvaz Defendants.

Like Pennsylvania, Virginia has an out-of-state business registration statute. *See* Va. Code Ann. § 13.1-1051(A). But unlike Pennsylvania, Virginia law does not require the out-of-state business to condition its registration on submitting to general personal jurisdiction. *Compare* 42 Pa. Cons. Stat. § 5301(a)(2)(i) ("The existence of . . . the following relationships . . . *shall* . . . enable the tribunals of this Commonwealth to exercise general personal jurisdiction . . . [i]ncorporation under . . . the laws of this Commonwealth" (emphasis added)) *with* Va. Code Ann. § 13.1-1051(A) ("A foreign limited liability company may not transact business in the Commonwealth until it obtains a certificate of registration from the Commission.").

Courts have limited the rule from *Mallory* to situations "where a state's business registration statute provides that a foreign corporation must consent to personal jurisdiction within the state as a condition of doing business." *Campbell v. Avis Budget Grp., Inc.*, No. 6:24-CV-03982, 2025 WL 1207776, at *3 (D.S.C. Apr. 25, 2025) (quoting *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-2873, 2023 WL 6846676, at *5 (D.S.C. Oct. 17, 2023)); *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 710 (D. Md. 2024); *Zhang v. United Health Grp., Inc.*, No. 5:23-CV-00194, 2024 WL 3576456, at *5 (W.D.N.C. June 28, 2024); *but see Espin v. Citibank, N.A.*, No. 5:22-CV-383, 2023 WL 6447231, at *4 (E.D.N.C. Sept. 29, 2023) (finding that older North Carolina Supreme Court precedent, in combination with North Carolina's business

- 11 -

registration statute, subjected Citibank to general jurisdiction as a condition of registration).
Those cases explain that the Supreme Court's holding concerns statutes that contain
provisions requiring an out-of-state corporation to consent to jurisdiction in the state's courts
as a *condition* of registering.

The interpretation of *Mallory* Plaintiffs seek would vastly expand the scope of general
personal jurisdiction. Indeed, under that reading, any out-of-state corporation registered to
do business in a state would be subjected to general personal jurisdiction regardless of where
it was incorporated or had its principal place of business, and regardless of its contacts with
the state. While Plaintiffs correctly point out that no "magic words" or specific phrases are
necessary in the statute to subject a corporation to general jurisdiction, Plaintiffs point to no
language in the Virginia statute that comes close to conditioning registration on submitting to
the jurisdiction of Virginia's courts. (*See* Pls.' Mem. in Opp'n at 25–29.) And Plaintiffs point
to no other source of state law interpreting the registration statute in that way. The court
concludes that, absent explicit consent to jurisdiction in Virginia's business registration statute,
there is no basis on which to conclude that Ayvaz Defendants have impliedly consented to
general personal jurisdiction in Virginia.

     ii.    *Specific Jurisdiction*

Ayvaz Defendants also argue that the court may not exercise specific jurisdiction over
the *collective* action by establishing personal jurisdiction over the claims brought by the named
plaintiff. (Defs.' Mem. at 14–16.) As a result, they submit, the court lacks personal jurisdiction
over Ayvaz Defendants with respect to putative collective action members who do not live in

or work in the Commonwealth.[6]  Ayvaz Defendants claim that, based on the Supreme Court's opinion in *Bristol-Myers Squibb Company v. Superior Court*, 582 U.S. 255 (2017), "the overwhelming majority of Federal Appellate Courts have held that, in the context of FLSA collective actions, a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum state."  (Defs.' Mem. at 15.)

Ayvaz Defendants correctly point out that the Third, Sixth, Seventh, Eighth, and Ninth Circuits have held that a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum state in the context of FLSA collective action suits.  *See Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865–66 (8th Cir. 2021); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 397 (6th Cir. 2021); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022); *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 724 (7th Cir. 2024); *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 682 (9th Cir. 2025).  Thus, "'[w]hat is needed' for a court to exercise specific personal jurisdiction 'is a connection between the forum and the *specific claims* at issue.'"  *Canaday*, 9 F.4th at 400 (quoting *Bristol-Myers Squibb*, 582 U.S. at 256).  And because "[e]ach failure to pay wages . . . is a separate violation that gives rise to a distinct claim," *Vallone*, 9 F.4th at 865, a court must conduct claim-by-claim analysis of each plaintiff's connection with the forum state and determine if an adequate link exists between the state and nonresidents' claims.  In other words, the court must have personal jurisdiction over every claim at issue in the collective action.

---

[6] Of the named plaintiffs included in the complaint, only Chandler Shamburg is a resident of Virginia.  (*See* Compl. ¶ 10.)  The rest are residents of Georgia, Texas, North Carolina, Florida, South Carolina, and New Mexico.  (*See id.* ¶¶ 13, 16, 19, 22, 25, 28.)

The court agrees with Ayvaz Defendants and the approach taken by the majority of the Courts of Appeals.[7]  As each opt-in plaintiff in this lawsuit is a separate, and real, party in interest, *see* 29 U.S.C. § 216(b), each individual plaintiff "must meet her burden for obtaining relief and satisfy the other requirements of party status." *Canaday*, 9 F.4th at 397.  Accordingly, "FLSA opt-in plaintiffs' claims against a defendant must present independent, sufficient bases for exercise of the court's specific personal jurisdiction over that claim." *Speight v. Lab. Source, LLC*, No. 4:21-CV-112, 2022 WL 1164415, at *7 (E.D.N.C. Apr. 19, 2022).  Plaintiffs here have failed to set forth any facts that would support a *prima facie* case of personal jurisdiction for Plaintiffs who neither live in nor work in Virginia.

Plaintiffs resist the majority approach by claiming that "the FLSA's collective action procedure is more like a Rule 23 action" than the mass action at issue in *Bristol-Myers Squibb*. (Pls.' Mem. in Opp'n at 31.)  They point to the fact that all putative collective action members were employed by the same employer, and that their claims arise from the same central decision by Ayvaz Defendants.  (*Id.* at 33.)  And because Plaintiff Shamburg worked for Ayvaz Defendants in Virginia and served Ayvaz Defendants with process according to Federal Rule of Civil Procedure 4(k), Plaintiffs argue they have established personal jurisdiction for present purposes.  (*Id.* at 34.)

Plaintiffs' argument that the court only needs personal jurisdiction over the claims brought by one named plaintiff fails.  While the Fourth Circuit has not directly spoken to this

---

[7] The First Circuit along with a handful of district courts in the Fourth Circuit follow a minority approach and hold that the court need only exercise personal jurisdiction over one named plaintiff in the FLSA action.  *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 99 (1st Cir. 2022); *Stacy v. Jennmar Corp. of Va., Inc.*, 342 F.R.D. 215, 221–22 (W.D. Va. 2022); *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 613 (S.D.W. Va. 2020); *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *2 (N.D.W. Va. Dec. 4, 2019).  As explained below, however, the court finds the majority approach more persuasive.

issue, the court is persuaded by the majority approach.  First, the text of the FLSA supports the majority approach.  While the statute describes actions as being "maintained . . . by any one or more employees *for and in behalf of* himself or themselves and other employees similarly situated," it also states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing *to become such a party* and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b) (emphases added).  The FLSA's procedure does not focus on the named plaintiff but rather allows each employee to consent to become a separate party to the lawsuit, making him subject to the same jurisdictional requirements as every other plaintiff.  Second, the Supreme Court has highlighted procedural differences between an FLSA collective action and a Rule 23 action.

> Under the FLSA, by contrast [to a Rule 23 class], 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court.

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (internal citations omitted).

Given the textual and interpretative differences, an FLSA collective action suit should not be treated as indistinguishable from a Rule 23 class action.  The limits of Rule 4, the opt-in process, and the fact that a collective action does not "produce a class with an independent legal status" support this contention.  *Id.*  In contrast to a Rule 23 class action, an FLSA collective action groups together similarly situated plaintiffs who require an individual basis for personal jurisdiction, per the Supreme Court's decision in *Bristol-Meyers Squibb*. Accordingly, the court will grant Ayvaz Defendants' motion to dismiss the claims by the

delivery drivers who neither live in nor work in Virginia from the FLSA collective action for lack of personal jurisdiction.

### 2.  Claims Against Defendant Dhanani

Finally, Ayvaz Defendants assert that Plaintiffs fail to establish that the court has personal jurisdiction over Defendant Dhanani.  (Defs.' Mem. at 18.)  Ayvaz Defendants contend that the complaint does not contain facts that suggest Dhanani has a connection with Virginia beyond his ownership of Pizza Hut Franchise Stores in the state.  (Defs.' Reply at 18–19.)  In response, Plaintiffs point to Dhanani's ownership of Pizza Hut Franchise Stores in Virginia as sufficient evidence.  (Pls.' Mem. in Opp'n at 36–37.)

The court must determine whether Plaintiffs' complaint adequately alleges that Dhanani has sufficient minimum contacts with Virginia "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted). In general, mere status as an officer of a corporation doing business in the forum state is insufficient to establish personal jurisdiction over that officer.  *See Adams v. Berch*, No. 5:24-cv-00053, 2024 WL 4529341, at *5 (W.D. Va. Oct. 18, 2024) (citing *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064-65 (4th Cir. 1983)); *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004); *Rhee Bros., Inc. v. Han Ah Reum Corp.*, 178 F. Supp. 2d 525, 532 (D. Md. 2001); *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 821 (D. Md. 1999).  However, when corporate agents have conducted limited business activity in the forum state, the Fourth Circuit has previously conferred personal jurisdiction.  *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002)

(concluding a corporate principal who committed fraudulent acts in Virginia was subject to personal jurisdiction); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 527–30 (4th Cir. 1987) (finding the directors of corporation who did not physically enter West Virginia but engaged in business over the phone with a West Virginia-based officer established sufficient minimum contacts); *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990) (holding that conducting business phone calls with a Virginia-based client was sufficient to confer personal jurisdiction). Some of these contacts occurred *without* an individual's physical presence within Virginia. Thus, "minimum contacts" can be established through phone conversations or business transactions—without ever setting foot in Virginia.

The complaint, however, does not allege any facts that support Dhanani's minimum contacts with Virginia. Plaintiffs provide no information as to Dhanani's business dealings in Virginia beyond the fact that Ayvaz is registered to do business in Virginia and operates an unidentified number of Pizza Hut Franchise Stores within the Commonwealth. (*Id.* ¶¶ 34, 37; 49–73.) But Plaintiffs do not state that Dhanani has visited the Commonwealth, communicated with a Virginia-based employee, or has any connections sufficient to support the necessary minimum contacts. Accordingly, the court will grant Ayvaz Defendants' motion to dismiss with respect to the claims against Defendant Dhanani and dismiss those claims without prejudice.

### B. Subject Matter Jurisdiction

#### 1. Supplemental Jurisdiction Over State-Law Claims

A district court need not exercise supplemental jurisdiction. Rather, "supplemental jurisdiction is discretionary." *Parker v. Austin*, 105 F. Supp. 3d 592, 604 (W.D. Va. 2015).

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if: (1) "the claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "The exceptions in section 1367(c) apply 'where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" *Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810, 2017 WL 4322404, at *6 (E.D.N.C. Sept. 28, 2017) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)).

Ayvaz Defendants argue that the court should decline to exercise supplemental jurisdiction over all of Plaintiffs' state-law claims under § 1367(c)(2) and (4), asserting that the state-law claims substantially predominate over the FLSA claim and that administrability concerns provide exceptional circumstances. (Defs.' Mem. at 18–21.)

State claims substantially predominate over an FLSA claim if the state claims are "more important, more complex, more time consuming to resolve, or in some way more significant than its federal counterpart." *Bagley v. Provident Bank*, No. Civ. WDQ-05-0184, 2005 WL 1115245, at *1 (D. Md. Apr. 26, 2005). In this case, the court agrees that Plaintiffs' state-law claims predominate over the FLSA claim.

In several respects, the state-law claims here will be more complex and more time-consuming to resolve than the FLSA claim. Sitting alongside the FLSA claim in the complaint are seventeen state-law claims. (*See* Compl. ¶¶ 304–411.) The seventeen counts assert causes

of action from seven different states and invoke both state statutory and common law.  While

the claims all involve the conduct of Ayvaz Defendants, the court would need to undertake

an individualized analysis of each state common and statutory law to determine liability and

damages.  *See White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 7640932, at *24 (N.D.

Ohio Dec. 23, 2020) ("Here, were the Court to retain jurisdiction, it would be required to

delve into numerous purely state law issues. . . . Such statutory interpretation is better left to

state courts[.]").  What's more, the complaint outlines eight subclasses, even splitting one

state's law—New Mexico—into two subclasses, a "New Mexico Wage Class" and a "New

Mexico Unjust Enrichment Class."  (*See* Compl. ¶¶ 282–83.)  Indeed, the presence of *more*

subclasses (eight) than states (seven) provides evidence of both complexity and the lack of

commonality that tips towards the conclusion that the state-law claims predominate.  *See*

*Aquilino v. Home Depot U.S.A., Inc.*, No. 04-CV-4100, 2006 WL 2023539, at *3 (D.N.J. July 17,

2006).  Given the broad range of state wage and hour statutes, state untimely payment statutes,

state common law unjust enrichment claims, and issues implicated, the court finds that these

claims would substantially predominate over the FLSA claim.

Additionally, the management and resolution of the proposed state-law claims and their

respective Rule 23 subclasses would also predominate over Plaintiffs' FLSA claims, which are

not brought as a Rule 23 class action.  As for any liability phase, significant discovery would

be needed for the state claims in comparison with the FLSA claim.  This is particularly true

because of the court's ruling above concerning the exercise of personal jurisdiction only over

putative class members who live or work in Virginia.  And as for damages, any post-trial

damages phase for absent class members would result in significant amounts of the court's

time and resources being devoted to the state-law Rule 23 claims. *See De La Riva v. Houlihan Smith & Co., Inc.*, 848 F. Supp. 2d 887, 891 (N.D. Ill. 2012).

Finally, although not dispositive, the court considers the fact that the state-law claims vastly outnumber the federal claim. *See Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 649841, at *9 (S.D. Ohio Mar. 11, 2009). While state-law claims do not necessarily predominate over federal claims just because they are more numerous, the court concludes that the quantity matters "because of what those numbers portend in terms of the Court's relative total workload and attention as between the sole federal claim and the state-law class actions." *Foster v. Sitel Operating Corp.*, No. 3:19-CV-00148, 2023 WL 149993, at *9 (M.D. Tenn. Jan. 10, 2023). Accordingly, the court finds that the seventeen state-law claims would vastly expand the scope of this case beyond what is necessary and relevant to the FLSA claim. *See Davis v. Wayne Cnty. Election Comm'n*, No. 20-11819, 2020 WL 3833041, at *2 (E.D. Mich. July 8, 2020).

However, the court notes that Plaintiffs are free to pursue their state-law claims, including potential class claims, in the respective state courts. *See Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247, 253 (D. Conn. 2007) ("Plaintiff and other putative class members remain free to pursue class claims for violation of their respective state's wage and hour laws in their respective state courts."). Since the court will decline to hear the state-law claims because they would predominate over the FLSA claim, the court need not address Ayvaz Defendants' alternative additional argument that exceptional circumstances exist to merit declining jurisdiction over the state-law claims. Accordingly, the court will grant the motion

to dismiss Counts II through XVIII, the state-law claims, for lack of supplemental jurisdiction.[8]

## C. First-to-File Doctrine

Under the first-to-file doctrine, "the court first acquiring jurisdiction of a controversy should be allowed to proceed . . . without interference from other courts under suits subsequently instituted." *Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944); *see also Hop-In Food Stores, Inc. v. S & D Coffee, Inc.*, 642 F. Supp. 1106, 1107 (W.D. Va. 1986) ("The general rule in federal courts is that the court in which jurisdiction first attaches should be the one to decide the case."). In general, then, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594–95 (4th Cir. 2004) (citation omitted).

Courts in the Western District of Virginia apply the first-to-file doctrine in "avoidance of duplicative litigation and the conservation of judicial resources." *Moore's Elec. & Mech. Constr., Inc. v. SIS, LLC*, No. 6:15-cv-00021, 2015 WL 6159473, at *2 (W.D. Va. Oct. 20, 2015) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005)); *see also Harris v. McDonnell*, No. 5:13-cv-00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013).

---

[8] In their responsive brief, Plaintiffs claim that the court may have original jurisdiction over the state-law claims in their complaint pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). (Pls.' Mem. in Opp'n at 24–25.) The court finds that Plaintiffs have failed to provide facts that allow the court to exercise jurisdiction over the Rule 23 class action claims under CAFA. Plaintiffs have failed to allege anything related to CAFA in their complaint and include only two paragraphs about this jurisdictional pathway for the first time in their response brief. (*See id.*) Because the seventeen state-law claims result in eight different classes of plaintiffs, (Compl. ¶ 284), proper consideration of CAFA requires more detailed information about each claim and the members of each class. In particular, Plaintiffs fail to state anything related to the amount in controversy and citizenship of class members. Each class action brought must meet CAFA's requirements concerning the amount in controversy and diversity of the parties, though the number of class members allows consideration of the aggregate classes. *See* 28 U.S.C. § 1332(d)(5)(B); *Ayers v. CIOX Health, LLC*, 735 F. Supp. 3d 607, 613–14 (D. Md. 2024) (refusing to aggregate the amount in controversy for two distinct claims). Given the insufficient information provided, this court will decline to exercise original jurisdiction pursuant to CAFA.

However, the first-to-file doctrine should not be mechanically applied. *Quesenberry v. Volvo Grp. N. Am., Inc.*, No. 1:09-cv-00022, 2009 WL 648658, at *3 (W.D. Va. Mar. 10, 2009); *see also Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, No. 6:12-cv-00052, 2013 WL 1164835, at *4 (W.D. Va. Mar. 20, 2013) ("Because the policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources . . . exceptions to the rule are common when justice or expediency requires." (internal quotation marks omitted)). Ultimately, "[t]he decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." *Elderberry of Weber City, LLC*, 2013 WL 1164835, at *4.

Courts typically look to three considerations before applying the doctrine. *See Moore's Elec. & Mech. Constr., Inc.*, 2015 WL 6159473 at *3–4. First, courts consider whether a previously filed case is substantively the same or sufficiently similar to the case currently pending before the court. *Id.* at *3. Second, courts evaluate whether the current case before the court is subject to the special circumstances exception to the first-to-file doctrine. *Id.* at *3–4. Third, courts assess whether the balance of convenience favors the second action, another exception to application of the doctrine. *Id.* at *4. Because the court finds that the first-to-file doctrine does not apply under the first consideration, it need not go further.

Ayvaz Defendants assert that the instant complaint should be dismissed under the first-to-file doctrine due to the presence of two other cases.

1. *Garza v. Ayvaz Pizza, LLC*

Ayvaz Defendants first claim that *Garza v. Ayvaz Pizza, LLC*, filed in the U.S. District Court for the Southern District of Texas, precludes Plaintiffs from bringing this lawsuit.

(Defs.' Mem. at 12).  However, after Ayvaz Defendants filed their motion, the *Garza* case was settled and dismissed with prejudice on March 7, 2025.  *Garza v. Ayvaz Pizza, LLC*, Dkts. 54, 58.  That development matters.  Courts often state that application of the first-to-file doctrine requires two *pending* cases and decline to apply the rule when the first-filed action has been dismissed.  *See Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 3:23CV435, 2024 WL 23149, at *8 (E.D. Va. Jan. 2, 2024); *see also Hill-Green v. Experian Info. Sols., Inc.*, No. 3:19CV708, 2020 WL 5539042, at *11 n.17 (E.D. Va. Sept. 15, 2020) ("Although the first-to-file rule may have been applicable while the Central District of California considered the [earlier filed] *Price* case, because *Price* has settled, the first-to-file rule no longer informs the Court's analysis.").  Accordingly, other courts decline to apply the first-to-file doctrine in FLSA claims after a previously filed case settled.  *Jean-Francois v. Smithfield Foods, Inc.*, No. 7:22-CV-63, 2022 WL 17813139, at *3 (E.D.N.C. Dec. 19, 2022) ("The [previously filed] *Canas* litigation is not 'pending' for purposes of the first-to-file rule. The *Canas* litigation has settled and, in accordance with the order approving settlement, the court has dismissed with prejudice the underlying claims in *Canas*.").  This court will do the same.[9]  The court declines to apply the first-to-file doctrine based on the presence of *Garza*, as that case is no longer pending.

2. *Stotesbery v. Muy Pizza-Tejas, LLC*

---

[9] While Ayvaz Defendants ask the court to consider a closed case for purposes of the first-to-file doctrine, the court declines that invitation.  During the hearing, Ayvaz Defendants pointed to three cases to support the proposition that the court should compare the instant case with a case that has been dismissed with prejudice.  But notably, in the three cases counsel cited to at the hearing, prior cases remained pending when the first-to-file doctrine was analyzed.  *See Jean-Francois*, 2022 WL 17813139, at *3 (E.D.N.C. Dec. 19, 2022); *Ortiz v. Panera Bread Co.*, No. 1:10CV1424, 2011 WL 3353432, at *1 (E.D. Va. Aug. 2, 2011); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2012 WL 4739534, at *7–8 (E.D. Va. Oct. 2, 2012).

Ayvaz Defendants next argue that *Stotesbery v. Muy Pizza-Tejas, LLC*, a currently pending case filed in the U.S. District Court for the District of Minnesota, precludes Plaintiffs from filing their complaint under the first-to-file doctrine. The court considers whether the instant complaint is substantively the same as the *Stotesbery* matter by assessing three factors: the chronology of the filings, the similarity of the parties involved, and the similarity of the issues at stake. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

      i.    *Chronology of the Filings*

Courts are unlikely to defer to the first-filed suit when the two suits are filed within a short period of time of each other. *See Quesenberry*, 2009 WL 648658, at *4 ("[C]ourts within the Fourth Circuit have held that a rigid application of the first-to-file rule is unwarranted when the second action was filed only weeks after the first action."); *see also Jean-Francois*, 2022 WL 17813139, at *3 (concluding a second suit filed five days after the first suit weighed against applying the doctrine). Analyzing the length of time allows courts to consider the efficient use of resources and allow a second suit to proceed "when little if anything has been done to advance [the first] action for trial." *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998).

Here, the chronology of the filings favors declining to hear the *Shamburg* case. Almost two and a half years passed between the filing of the initial complaint in the *Stotesbery* case and the filing of this complaint. Additionally, the parties in *Stotesbery* have already expended significant time and resources to prepare for trial. The parties have filed numerous motions, and a settlement agreement has been reached between the plaintiffs and one defendant. *See*

*Stotesbery v. Muy Pizzas-Tejas, LLC*, Dkts. 28, 143, 220.  The motions, hearings, and memoranda filed for the *Stotesbery* litigation demonstrate that much "has been done to advance that action for trial." *Affinity*, 20 F. Supp. 2d at 954.  Allowing the *Shamburg* suit to proceed may duplicate processes already completed for the *Stotesbery* litigation.  Thus, chronology of the filings supports declining to hear the *Shamburg* case.

ii.      *Similarity of the Parties*

Courts are likely to defer to the first-filed case when similar parties are involved in both suits.  When analyzing similarity, courts require only "substantial similarity," rather than an "exact match."  *Farina v. Mazda Motor of Am., Inc.*, No. 3:23-CV-50, 2023 WL 4241675, at *5 (W.D.N.C. June 28, 2023).  Though minimal overlap between parties in the two suits is insufficient, *see Jean-Francois*, 2022 WL 17813139 at *4, a mismatch in the exact parties does not preclude application of the first-to-file doctrine, *see Farina*, 2023 WL 4241675 at *5.

While the Defendants in the *Stotesbery* and *Shamburg* lawsuits are somewhat similar, the classes of Plaintiffs differ sufficiently to set apart the two lawsuits.  In *Stotesbery*, the collective action putative class was limited to delivery drivers employed by the defendants who lived in or worked in Minnesota.  *See Stotesbery v. Muy Pizza-Tejas, LLC*, Dkt. 58.  As explained above, the collective class in the instant complaint proceeds with delivery drivers who live in or work in Virginia.  The classes of plaintiffs represented in each suit, by design, have no overlap.  The court finds that substantial overlap is not present here, and thus this factor weighs in favor of hearing the *Shamburg* case.

iii.      *Similarity of the Issues*

Courts are likely to defer when issues between the cases are similar. Two issues are considered substantively similar when the underlying factual and legal issues in the cases are the same, such that determination in one action will leave little or nothing to be determined in the other. *Fisher v. Rite Aid Corp.*, Civ. Action No. RDB-09-1909, 2010 WL 2332101, at *2–3 (D. Md. June 8, 2010). In the context of FLSA collective action suits, courts in the Fourth Circuit have applied the first-to-file doctrine despite the existence of differing state or federal wage claims. *See, e.g.*, *id.*; *Troche v. Bimbo Foods Bakeries Distrib., Inc.*, No. 3:11CV234, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011). So, the existence of differing state wage law claims brought with an FLSA suit does not preclude the application of the first-to-file doctrine. *See Kendus v. USPack Servs. LLC*, Civ. Case No. SAG-19-00496, 2020 WL 1158570, at *4 (D. Md. Mar. 10, 2020) ("If a plaintiff could eviscerate the First-Filed rule merely by adding a claim based on the state law of the second forum, it would render the rule a dead letter.").

The FLSA collective action claims in *Stotesbery* and the instant case are not based on the same underlying factual and legal issues. *Stotesbery*, by design, includes an FLSA claim limited to those who work in Minnesota. By contrast, as explained above by the court, the Plaintiffs' FLSA claim in the instant case will go forward against only those plaintiffs who live in or work in Virginia. The two actions will not require resolution of the same factual and legal issues. Indeed, resolution of one matter will not impact resolution of the other.

Considering all three factors, this court finds that the cases at hand are not sufficiently similar to support dismissal under first-to-file despite the chronology of the filings. Allowing the two suits to proceed separately would not be "the epitome of judicial waste," *Troche*, 2011 WL 3565054, at *3, nor is this an instance where the first-to-file doctrine "should be applied

in a manner serving sound judicial administration," *United States v. Brick*, 846 F.2d 74 (Table), 1988 WL 33796, at *1 (4th Cir. Apr. 11, 1988) (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)).  Because the putative classes and respective issues in the two suits differ, allowing the *Shamburg* complaint to proceed would give plaintiffs their day in court.  Thus, this court will decline to dismiss the *Shamburg* complaint under the first-to-file doctrine.

## IV.    Conclusion

For the foregoing reasons, the court will **GRANT in part**, and **DENY in part**, Ayvaz Defendants' motion to dismiss (Dkt. 22).  Ayvaz Defendants' motion to dismiss the FLSA claims from Plaintiffs who neither live in nor work in Virginia will be **GRANTED**.  The FLSA claim from Plaintiffs who neither live in nor work in Virginia will be **DISMISSED without prejudice**.  Ayvaz Defendants' motion to dismiss all claims against Defendant Dhanani will be **GRANTED**.  All claims from Plaintiffs against Defendant Dhanani will be **DISMISSED without prejudice**.  Ayvaz Defendants' motion to dismiss for lack of supplemental jurisdiction over the state-law claims will be **GRANTED**.  Counts II through XVIII will be **DISMISSED without prejudice** to allow filing in state court.  Finally, Ayvaz Defendants' motion to dismiss the entire complaint under the first-to-file doctrine will be **DENIED**.  Accordingly, Plaintiffs' complaint will survive the motion to dismiss with respect to the FLSA claim for Plaintiffs who live in or work in Virginia.

An appropriate Order will follow.

**ENTERED** this 22nd day of August, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE